Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| FÉLIX VALENTÍN ORTIZ y otros<br><br>Recurridos<br><br>v.<br><br>NOEL FLORES PEÑA y otros<br><br>Peticionarios | TA2026CE00689 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.:<br>AB2025CV00111 (701)<br><br>Sobre: Daños y otros |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante nos el señor Noel Flores Peña ("señor Flores Peña" o "Parte Peticionaria") mediante *Petición de Certiorari* radicada el 28 de marzo de 2026. Nos peticiona la revocación de la *Orden* notificada el 6 de abril de 2026, por el Tribunal de Primera Instancia, Sala Superior de Caguas ("foro primario" o "foro *a quo*"). Por virtud del referido dictamen, el foro primario resolvió que las admisiones requeridas se consideran aceptadas, pues la Parte Peticionaria no sometió contestación dentro del término de veinte (20) días exigido en la Regla 33 de Procedimiento Civil, 32 LPRA Ap. V, R. 33.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari*, y *revocamos* la *Orden* recurrida.

### I.

El 30 de marzo de 2025, el señor Valentín Ortiz, la señora María Ramos González, y la Sociedad Legal de Bienes Gananciales constituida por ambos ("Parte Recurrida" o "matrimonio Valentín

Ramos", conjuntamente) instaron *Demanda* sobre daños y perjuicios y persecución maliciosa contra el señor Flores Peña, la señora Doris Peña Senati, madre del Peticionario y la Asociación de Residentes de Estancias del Río Inc.[1] En síntesis, la Parte Recurrida alegó que, a pesar de mantener una vida libre de conflictos, ha experimentado una serie de incidentes constitutivos de hostigamiento e intimidación por parte sus vecinos, el señor Flores Peña, y la señora Peña Senati.  En específico, adujo que el Peticionario ha entrado sin su autorización a su residencia, y ha desplegado insultos en su contra. Además, indicó que, el Peticionario ha presentado ante el sistema de justicia alegaciones infundadas que concluyen en desestimaciones por parte de los tribunales. En vista de lo anterior, solicitó que el foro primario condenara al señor Flores Peña y las señoras Peña Senati al pago ascendente a la suma de setenta y cinco mil dólares ($75,000.00) en concepto de daños y perjuicios, y pérdida del disfrute del hogar, entre otros extremos.

Por su parte, el 29 de septiembre de 2025, el señor Peña Flores radicó *Contestación a la Demanda*, en la cual negó la mayoría de las alegaciones levantadas en su contra.[2] Adujo que, la presente reclamación es frívola, caprichosa y temeraria. Arguyó, además, que resulta inflamatoria e infundada con el fin de crear ánimo prevenido contra el compareciente, por lo que, peticionó la desestimación de la *Demanda* de epígrafe.

Iniciados los procedimientos, el 22 de diciembre de 2025, el matrimonio Valentín Ramos remitió el *Requerimiento de Admisiones* a la Parte Peticionaria.[3] En lo pertinente, la Parte Recurrida solicitó contestación a las siguientes alegaciones:

---

[1] *Véase*, SUMAC TPI, Entrada 1.
[2] *Véase*, SUMAC TPI, Entrada 26.
[3] *Véase*, SUMAC TA, Entrada 1, Anejo I.

1. Admita que usted reside o ha residido en la Urbanización Estancias del Río durante el periodo comprendido entre octubre de 2024 y mayo de 2025.

2. Admita que la residencia que usted ocupa en la Urbanización Estancias del Río colinda directa o indirectamente con la residencia del señor Félix Valentín Ortiz.

3. Admita que usted conocía al señor Félix Valentín Ortiz con anterioridad al 6 de octubre de 2024.

4. Admita que el 6 de octubre de 2024 usted se encontraba físicamente en las inmediaciones de la residencia del señor Félix Valentín Ortiz.

5. Admita que el 6 de octubre de 2024 usted ingresó o accedió al patio, marquesina o área perteneciente a la residencia del señor Félix Valentín Ortiz sin invitación expresa.

6. Admita que el 6 de octubre de 2024 usted sostuvo un intercambio verbal con el señor Félix Valentín Ortiz frente a su residencia.

7. Admita que durante dicho intercambio verbal del 6 de octubre de 2024 usted utilizó expresiones ofensivas, retadoras o intimidantes dirigidas al señor Félix Valentín Ortiz.

8. Admita que el 6 de octubre de 2024 usted intentó ingresar o forzar el acceso a la residencia del señor Félix Valentín Ortiz.

9. Admita que, como resultado de los eventos ocurridos el 6 de octubre de 2024, se alertó a personal de seguridad y a agentes del orden público.

10. Admita que en al menos una de esas ocasiones posteriores al 6 de octubre de 2024 usted realizó expresiones verbales dirigidas al señor Félix Valentín Ortiz desde la vía pública o áreas comunes.

11. Admita que el 27 de febrero de 2025 usted se encontraba en áreas comunes o colindantes a la residencia del señor Félix Valentín Ortiz mientras este realizaba labores de jardinería.

12. Admita que el 27 de febrero de 2025 usted se acercó a la marquesina o entrada de la residencia del señor Félix Valentín Ortiz.

13. Admita que el 27 de febrero de 2025 usted sostuvo un intercambio verbal con el señor Félix Valentín Ortiz.

14. Admita que durante el intercambio verbal del 27 de febrero de 2025 usted profirió amenazas o retos dirigidos al señor Félix Valentín Ortiz.

15. Admita que el 27 de febrero de 2025 ocurrió contacto físico entre usted y el señor Félix Valentín Ortiz.

16. Admita que como resultado del evento ocurrido el 27 de febrero de 2025 hubo testigos presenciales.

17. Admita que usted ha grabado, fotografiado o almacenado videos, audios o imágenes relacionadas con alguno de los incidentes ocurridos entre usted y el señor Félix Valentín Ortiz.

18. Admita que usted ha compartido videos, audios o imágenes relacionados con estos incidentes con terceras personas.

19. Admita que el 24 de mayo de 2025 usted fue intervenido, detenido o arrestado en relación con

conductas dirigidas hacia la residencia del señor Félix Valentín Ortiz.

20. Admita que para el 24 de mayo de 2025 usted tenía conocimiento de la existencia de una orden judicial u orden de protección que limitaba su acercamiento o comunicación con el señor Félix Valentín Ortiz.

21. Admita que, con conocimiento de dicha orden judicial u orden de protección, usted estuvo en las inmediaciones de la residencia del señor Félix Valentín Ortiz.

22. Admita que usted ha realizado actos que pudieran ser percibidos como intimidantes frente a la residencia del señor Félix Valentín Ortiz, incluyendo lanzar objetos, portar palos o realizar gestos amenazantes.

23. Admita que usted ha participado directa o indirectamente en la radicación de querellas, solicitudes de órdenes de protección o procedimientos legales contra el señor Félix Valentín Ortiz.[4]

Con posterioridad, el 18 de marzo de 2026, la Parte Recurrida presentó *Moción Solicitando Que Se D[é] por Admitido el Primer Requerimiento de Admisiones.*[5] En esencia, detalló que el 22 de diciembre de 2025, notificó al señor Flores Peña el *Requerimiento de Admisiones*. Precisó que, a partir de dicha notificación, comenzó a transcurrir el término jurisdiccional de veinte (20) días para contestar el aludido requerimiento, según dispone la Regla 33 de Procedimiento Civil, 32 LPRA Ap. V. R. 33. No obstante, informó que, a la fecha de la radicación de la moción, la Parte Peticionaria no había notificado contestación referente a las admisiones requeridas y tampoco solicitó prórroga a tales efectos. A la luz de lo anterior, indicó que el término para responder los requerimientos venció sin que mediara justificación válida para dicho incumplimiento. Según su postura, procede la admisión de los requerimientos de conformidad con la Regla 33 de Procedimiento Civil, *supra.*

En vista de ello, el foro primario dictó *Orden* notificada el 19 de marzo de 2026, en la cual dispuso "TENGA NOEL FLORES PEÑA 10 DÍAS PARA EXPONER SU POSICIÓN".[6]

---

[4] *Véase,* SUMAC TA, Entrada 1, Anejo I.
[5] *Véase,* SUMAC TPI, Entrada 54.
[6] *Véase,* SUMAC TPI, Entrada 56.

En cumplimiento, el 30 de marzo de 2026, el Peticionario sometió *Moción Informativa,* mediante la cual indicó que durante ese día procedió a notificar a la Parte Recurrida las contestaciones al *Primer Requerimiento de Admisiones.*[7] En igual fecha, radicó *Oposición a Moción Solicitando Que Se Den Por Admitidas las Admisiones.*[8] En esencia, argumentó que no remitió su respuesta por causas justificadas. Ello, pues, relató que atravesó una condición de salud mental que afectó significativamente su capacidad para participar de forma activa en la preparación de su defensa y coordinarse oportunamente con su representante legal. Precisó que, lo anterior ocurrió durante el período de la notificación y la radicación de la presente oposición. Sobre este particular, expuso lo siguiente:

> **La condición médica del compareciente incidió en su capacidad de respuesta procesal durante las semanas posteriores a la notificación del Requerimiento de Admisiones. La omisión no fue producto de indiferencia hacia las obligaciones procesales, sino de una limitación real y concreta en la condición del compareciente que impidió su participación oportuna**.[9] (Énfasis nuestro).

Por consiguiente, peticionó que se denegara la *Moción Solicitando que se Den por Admitidas las Admisiones.* Por ende, suplicó que se tengan radicadas las *Contestaciones al Requerimiento de Admisiones.*

En vista de lo anterior, el foro primario notificó *Orden* el 30 de marzo de 2026, en la cual dispuso lo siguiente: "TENGA LA PARTE DEMANDANTE 3 DIAS PARA SOMETER CERTIFICACION MEDICA SOBRE SU ALEGADA INCAPACIDAD TEMPORERA".[10]

El 2 de abril de 2026, la Parte Peticionaria radicó *Moción Informativa,* a la cual adjuntó la certificación médica fechada el 13 de marzo de 2025.[11] **Surge del referido documento que, el señor**

---

[7] *Véase,* SUMAC TPI, Entrada 57.
[8] *Véase,* SUMAC TPI, Entrada 58.
[9] *Véase,* SUMAC TPI, Entrada 58, pág. 2.
[10] *Véase,* SUMAC TPI, Entrada 59.
[11] *Véase,* SUMAC TPI, Entrada 61.

**Flores Peña experimenta una condición de salud mental. De acuerdo con la información brindada por su médico especialista, "[e]n la actualidad, continúa presentando síntomas característicos de su situación de salud, lo cual puede impactar su desempeño social y funcional".[12] Por lo que, se recomienda considerar estos factores al evaluar sus necesidades y la posibilidad de que se ajuste a su entorno**, según se expone en el certificado médico.

Examinada su petición, el foro *a quo* notificó *Orden* el 6 de abril de 2026, en la cual determinó lo siguiente:

> NO HA LUGAR. TOMANDO EN CONSIDERACION QUE EL REQUERIMIENTO DE ADMISIONES SE LE CURS[Ó] A NOEL TORRES PEÑA EL 22 DE DICIEMBRE DE 2025 Y NO FUE HASTA LUEGO DE LA SOLICITUD DE LA PARTE DEMANTE (SIC) QUE ESTE SOMETI[Ó] SU CONTESTACI[Ó]N, EL REQUERIMIENTO DE ADMISIONES SE DA POR ADMITIDO. **NOTESE, QUE PASARON 3 MESES**.[13]

Oportunamente, el 14 de abril de 2026, el señor Flores Peña sometió *Moción de Reconsideración*, mediante la cual estableció que la Parte Recurrida incumplió con el requisito procesal dispuesto en la Regla 34.1 de Procedimiento Civil, 32 LPRA Ap. V., R. 34.1.[14] Ello, pues, explicó que el matrimonio Valentín Ramos no le inquirió de forma alguna en cuanto a las contestaciones al *Requerimiento de Admisiones* previo a acudir al foro primario. A su vez, argumentó que la *Orden* impugnada impone la sanción procesal más severa contemplada en nuestro ordenamiento, es decir, "tener por admitidos veintitrés (23) hechos graves que incluyen alegaciones de agresión física, amenazas, conducta intimidante y violación a una orden judicial".[15] Por tanto, solicitó que se dejara sin efecto la admisión de tales hechos, en consideración al estándar pautado en *Audiovisual Lang. V. Sist.*

---

[12] *Véase*, SUMAC TPI, Entrada 61, Anejo I.
[13] *Véase*, SUMAC TPI, Entrada 62.
[14] *Véase*, SUMAC TPI, Entrada 65.
[15] *Véase*, SUMAC TPI, Entrada 65, pág. 1.

*Est. Natal Hnos.*, 144 DPR 563 (1997). Precisó que, en virtud del aludido precedente, el Máximo Foro estatal resolvió que el tribunal debe interpretar la Regla 33 de Procedimiento Civil, 32 LPRA Ap. V. R. 33, de forma flexible con el propósito de que el conflicto se dilucide en sus méritos ante admisiones tácitas.

Evaluados sus argumentos, el foro primario notificó *Orden* el 28 de abril de 2026, en la cual declaró *No Ha Lugar* la reconsideración solicitada por la Parte Peticionaria.[16]

Inconforme, el 28 de mayo de 2026, el señor Flores Peña recurrió ante este Tribunal de Apelaciones mediante *Petición de Certiorari*, en la cual esbozó los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al no aplicar el estándar de flexibilidad y especial cuidado exigido por *Audiovisual Lang. V. Sist. Est. Natal Hnos.*, 144 DPR 563 (1997), aun cuando al momento de emitir la Orden recurrida el Tribunal había sido informado mediante moción de que las contestaciones al Requerimiento de Admisiones habían sido notificadas a la parte demandante, obraba una explicación médica acreditada y no existía demostración de perjuicio para la parte recurrida.
>
> Erró el Tribunal de Primera Instancia al no permitir el retiro de las admisiones tácitas conforme a la Regla 33(b) de Procedimiento Civil, aun cuando la parte peticionaria había presentado las contestaciones bajo juramento, respondido al requerimiento del tribunal y sometido la evidencia requerida, y no habiendo la parte recurrida demostrado perjuicio.
>
> Erró el Tribunal de Primera Instancia al mantener vigente, incluso luego de presentada la reconsideración, una determinación basada en una moción de descubrimiento de prueba que incumplía con el requisito previo de certificación de gestiones de buena fe exigido por la Regla 34.1 de Procedimiento Civil.

El 1 de junio de 2026, esta Curia emitió *Resolución* en la cual concedió a la Parte Recurrida el término a vencer el 8 de junio de 2026 para someter su alegato en oposición. En cumplimiento, el matrimonio Valentín Ramos radicó *Oposición a Petición de Certiorari,* en la cual solicitó la denegatoria del recurso discrecional, por considerar que la actuación del foro primario es correcta en derecho.

---

[16] *Véase*, SUMAC TPI, Entrada 67.

Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia ante nuestra consideración.

## II.

### A. *Recurso de certiorari*

Es norma reiterada que, "una resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). Véase, también, *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 251 (2012). Así, pues, el auto *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Artículo 670 del Código de Enjuiciamiento Civil, Ley Núm. 6 del 31 de marzo de 1933, 32 LPRA sec. 3491, según emendada. La característica distintiva de este recurso "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

Ahora bien, el ejercicio de nuestra discreción judicial no es irrestricto. A tales efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias que activan nuestras facultades revisoras ante las resoluciones y las órdenes interlocutorias:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios

evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

A pesar de que la Regla 52.1 de Procedimiento Civil, *supra*, permite revisar las determinaciones interlocutorias recurridas, "la expedición del auto y la adjudicación en sus méritos es discrecional". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). En armonía con lo anterior, la Regla 40 del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), fija los criterios para la expedición de un auto de *certiorari*:

(A) **Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.**

(B) **Si la situación de hechos planteada es la más indicada para el análisis del problema.**

(C) **Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.**

(D) **Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.**

(E) **Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.**

(F) **Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.**

(G) **Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia**. (Énfasis nuestro).

Estas consideraciones orientan la función del foro apelativo para ejercer sabiamente nuestra facultad discrecional. *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209. Ello, pues, nos corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración en tal ejercicio discrecional. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 849 (2023). Por tanto, los tribunales revisores no debemos intervenir en las determinaciones de hechos del tribunal de

instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

### B. Requerimiento de admisiones

El requerimiento de admisiones es un mecanismo procesal dispuesto en la Regla 33, incisos (a) y (b), de Procedimiento Civil, 32 LPRA Ap. V, R. 33, que consiste en el proceso esbozado a continuación:

**(a) Requerimiento de admisión. — A los efectos de la acción pendiente únicamente, una parte podrá requerir por escrito a cualquier otra parte que admita la veracidad de cualesquiera materias dentro del alcance de la Regla 23.1 contenidas en el requerimiento, que se relacionen con cuestiones de hechos u opiniones de hechos o con la aplicación de la ley a los hechos, incluyendo la autenticidad de cualquier documento descrito en el requerimiento. Se notificarán copias de los documentos conjuntamente con el requerimiento, a menos que hayan sido entregadas o suministradas para inspección y copia. <u>El requerimiento podrá notificarse, sin el permiso del tribunal, a la parte demandante luego de comenzado el pleito y a cualquier otra parte luego de haber transcurrido el término de los treinta (30) días siguientes a la fecha de su emplazamiento. Si la parte demandada inicia cualquier tipo de descubrimiento dentro del referido plazo, dicha limitación no será de aplicación</u>.**

**Cada materia sobre la cual se requiera una admisión deberá formularse por separado. <u>Todas las cuestiones sobre las cuales se solicite una admisión se tendrán por admitidas, a menos que dentro de los veinte (20) días de haberle sido notificado el requerimiento, o dentro del término que el tribunal concediese mediante moción y notificación, la parte a quien se le notifique el requerimiento le notifica a la parte que requiere la admisión, una contestación suscrita bajo juramento por la parte o una objeción escrita sobre la materia.</u> A menos que el tribunal acorte el término, una parte demandada no estará obligada a notificar contestaciones u objeciones antes de transcurridos veinte (20) días a partir de haberle sido entregada copia de la demanda y el emplazamiento, debiéndose en este caso apercibirle en el requerimiento que de no contestarlo en el término dispuesto se entenderá admitido. Si se objeta el requerimiento de admisión, deberán hacerse constar las razones para ello. La contestación deberá negar específicamente la materia o exponer en detalle las razones por las cuales la parte a quien se le requiere la admisión no puede admitir o negar lo requerido. Toda negación deberá responder cabalmente a la sustancia de la admisión requerida, y cuando la buena fe exija que una parte cualifique su**

**contestación o niegue solamente una parte de lo requerido, deberá especificarse lo que sea cierto y negarse solamente el resto. Una parte a quien se le requiere una admisión no podrá aducir como razón para así no hacerlo la falta de información o de conocimiento, a menos que demuestre que ha hecho las gestiones necesarias para obtener dicha información y que la información conocida u obtenida es insuficiente para admitir o negar. Una parte no podrá objetar el requerimiento basándose únicamente en que la materia requerida presenta una controversia justiciable; podrá, sujeto a lo dispuesto en la Regla 34.4, negar lo requerido o exponer las razones por las cuales no puede admitir o negar.**

**La parte que ha requerido las admisiones podrá, mediante una moción, cuestionar la suficiencia de las contestaciones u objeciones. A menos que el tribunal determine que una objeción está justificada, ordenará que se conteste lo requerido. Si el tribunal determina que una contestación no cumple con los requisitos de esta regla, podrá ordenar que se dé por admitido lo requerido o que se notifique una contestación enmendada. El tribunal podrá, en su lugar, determinar que se dispondrá finalmente del requerimiento en una conferencia con antelación al juicio o en una fecha señalada antes del juicio. Las disposiciones de la Regla 34.2(c) son de aplicación a la imposición de gastos en que se incurra con relación a la moción.**

**<u>(b) Efecto de la admisión. — Cualquier admisión hecha en conformidad con esta regla se considerará definitiva, a menos que el tribunal, previa moción al efecto, permita el retiro o enmienda de la admisión. Sujeto a lo dispuesto en la Regla 37, que regula las enmiendas de una orden dictada en conferencia con antelación al juicio, el tribunal podrá permitir el retiro o enmienda de la admisión si ello contribuye a la disposición del caso en sus méritos y la parte que obtuvo la admisión no demuestra al tribunal que el retiro o la enmienda afectará adversamente su reclamación o defensa. Cualquier admisión de una parte bajo estas reglas sólo surtirá efecto a los fines del pleito pendiente y no constituirá una admisión de dicha parte para ningún otro fin, ni podrá ser usada en su contra en ningún otro procedimiento.</u>** (Énfasis nuestro).

Según la jurisprudencia interpretativa, la precitada regla "persigue aligerar los procedimientos para definir y limitar las controversias del caso y proporcionar así un cuadro más claro sobre éstas". *Rivera Prudencio v. Mun. de San Juan,* 170 DPR 149, 171 (2007); *Audiovisual Lang v. Sist. Est. Natal Hnos.,* 144 DPR 563, 571 (1997). Mediante este mecanismo una parte puede requerir a la otra que admita la veracidad de cualquier materia que esté dentro del alcance de la Regla 23.1 de Procedimiento Civil, respecto a cuestiones u opiniones de hechos o con la aplicación de la ley a los hechos, o que admita la autenticidad de cualquier

documento que se acompañe con el requerimiento. *Rivera Prudencio v. Mun. de San Juan, supra,* pág. 171.

La admisión formulada bajo un requerimiento se considera definitiva como prueba de los hechos admitidos, salvo que la parte que hizo la admisión solicite al tribunal bajo la Regla 33(b) de Procedimiento Civil, *supra,* ser relevado de dicha admisión. R. Hernández Colón*, Práctica jurídica de Puerto Rico: derecho procesal civil,* 6ta ed., San Juan, Ed. Lexis Nexis, 2017, sec. 3307, pág. 371. Ahora bien, la admisión del requerimiento no es un asunto automático. La aplicación de este mecanismo procesal debe ajustarse a la Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1, que lee así:

> **Estas reglas regirán todos los procedimientos de naturaleza civil ante el Tribunal General de Justicia. Se interpretarán de modo que faciliten el acceso a los tribunales y el manejo del proceso, de forma que garanticen una solución justa, rápida y económica de todo procedimiento.** (Énfasis nuestro).

Cónsono con lo anterior, en *Audiovisual Lang v. Sist. Est. Natal Hnos., supra,* págs. 573-574, el Tribunal Supremo de Puerto Rico estableció cómo deben proceder los foros primarios ante los requerimientos de admisión, según se discute a continuación:

> **En el ejercicio de su discreción el tribunal debe interpretar la regla de forma flexible para favorecer en los casos apropiados que el conflicto se dilucide en los méritos. Debe de ejercer especial cuidado cuando se trata de una admisión tácita, o sea, por no haberse contestado el requerimiento dentro del término establecido para ello**. (Énfasis nuestro).

En esa línea, nuestro Máximo Foro estatal resolvió que se permitirá el retiro o la enmienda de una admisión "si ello contribuye a la disposición del caso en sus méritos y la parte que obtuvo la admisión no demuestra al tribunal que el retiro o enmienda afectará adversamente su reclamación o defensa". *Íd.,* pág. 574. Por ello, "al igual que ocurre con cualquier otra regla procesal, al aplicarla e interpretarla no se puede permitir que consideraciones técnicas prevalezcan en detrimento de la justicia

sustancial". *Íd.*, pág. 575. Véase, también, Regla 33(b) de Procedimiento Civil, *supra*.

### C. *Debi do proceso de ley: vertiente procesal*

En nuestro esquema constitucional, ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Art. II, Sec. 7 Const. PR, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. En virtud de esta garantía se procura que toda persona tenga un proceso justo con todas las debidas garantías que ofrece la ley en el ámbito judicial como en el administrativo. *Com. Elect PPD v. CEE et al.*, 205 DPR 724, 743 (2020); *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012) (citando a *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995)).

Es menester explicar que, el debido proceso de ley se manifiesta en su vertiente sustantiva y procesal. *Pueblo v. Torrech Rodríguez*, 2026 TSPR 59, 218 DPR ___ (2026). Véanse, además, *Román Ortiz v. OGPe*, 203 DPR 947 (2020) (citando a *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018)). En su vertiente sustantiva, "protege los derechos y libertades concedidos a los ciudadanos por la vía constitucional, frente a la formulación de política pública por el Estado". *Pueblo v. Torrech Rodríguez, supra*; *Pueblo v. Montero Luciano*, 169 DPR 360, 369-370 (2006). Por otro lado, y en lo pertinente a este recurso, "[l]a vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo". *Com. Elect PPD v. CEE et al.*, *supra*, pág. 743; *U. Ind. Emp. A.E.P. v. A.E.P.*, 146 DPR 611, 616 (1998). En ese sentido, la dimensión procesal exige todas las garantías mínimas que el Estado debe proveer a cualquier individuo ante cualquier intromisión a su vida, libertad o

propiedad. *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 329 (2009).

De conformidad con lo anterior, el Tribunal Supremo de Puerto Rico ha reconocido que la vertiente procesal de este derecho en el contexto adjudicativo exige como mínimo: (1) la notificación adecuada del proceso; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado, y (6) que la decisión se base en el expediente. *PVH Motor v. ASG*, 209 DPR 122, 131 (2022); *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643 (2010). A la luz de tales garantías, las partes tienen derecho a ser escuchadas, examinar la evidencia presentada en su contra y a contrainterrogar a los testigos de la otra parte. *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416, 429 (2018); *Díaz Carrasquillo v. García Padilla*, 191 DPR 97, 111 (2014). En la medida que no se salvaguarden los aludidos derechos se violentan las disposiciones de nuestra Carta Magna y las garantías contenidas en la Constitución de Estados Unidos.

### D. Justa causa ante el vencimiento de un término

La Regla 68.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 68.2 instaura la siguiente normativa en torno al vencimiento del término y la presentación de justa causa:

> **Cuando por estas reglas, por una notificación dada en virtud de sus disposiciones o por una orden del tribunal se requiera o permita la realización de un acto en o dentro de un plazo especificado, el tribunal podrá, por justa causa, en cualquier momento y en el ejercicio de su discreción: (1) ordenar, previa moción o notificación, o sin ellas, que se prorrogue o acorte el término si así se solicita antes de expirar el término originalmente prescrito o según prorrogado por orden anterior, o (2) permitir, en virtud de moción presentada después de haber expirado el plazo especificado, que el acto se realice si la omisión se debió a justa causa,** pero no podrá prorrogar o reducir el plazo para actuar bajo las disposiciones de las Reglas 43.1, 44.1, 47, 48.2, 48.4, 49.2 y 52.2, salvo lo dispuesto en éstas bajo las condiciones en ellas prescritas.

A tales fines, la norma imperante establece se pueden eximir a una parte del requisito de observar fielmente un término de cumplimiento estricto, si están presentes las siguientes condiciones esenciales, a saber:

> *(1) que en efecto exista justa causa para la dilación, y (2) que la parte le demuestre detalladamente al tribunal las bases razonables que tiene para la dilación; esto es, que la parte interesada acredite de manera adecuada la justa causa aludida. Freire Ruiz et al. v. Morales, Hernández,* 2024 TSPR 129, 215 DPR __ (2024); *Rivera Marcucci et al. v. Suiza Dairy,* 196 DPR 157, 171 (2016).

Ahora bien, ante la falta de causa justificada o frente a excusas vagas y generales, los tribunales no gozan de discreción para prorrogar los términos de cumplimiento estricto. *Div. Empleados Públicos UGT v. CEMPR,* 212 DPR 741, 751 (2023); *Rivera Marcucci et al. v. Suiza Dairy, supra,* pág. 168. Por tanto, no es con vaguedades, excusas o planteamientos estereotipados que se cumple con el requisito de justa causa, sino con explicaciones concretas, debidamente evidenciadas, que permitan concluir que la tardanza o demora ocurrió razonablemente, por circunstancias especiales. *Freire Ruiz et al. v. Morales, Hernández, supra; García Ramis v. Serrallés,* 171 DPR 250, 254 (2007).

### E. Defensor judicial

En nuestro ordenamiento jurídico, el defensor judicial es un tutor especial nombrado por el tribunal para que represente a un incapacitado o a un menor en un pleito en específico. *Rivera Marrero v. Santiago Martínez,* 203 DPR 462, 486 (2019) (citando a *Crespo v. Cintrón,* 159 DPR 290, 300 (2003)); *R & G Premier Bank P.R. v. Registradora,* 158 DPR 241, 248 (2002). Este nombramiento procede en virtud del *parens patriae* que ostenta el Estado, cuyo objetivo principal es asegurar el bienestar de los menores o incapacitados. *Rivera Marrero v. Santiago Martínez, supra,* pág. 486.

A esos efectos, el Artículo 69 del Código Civil, 31 LPRA sec. 5511, preceptúa que, en casos de imposibilidad o incapacidad, la representación de una persona estará a cargo de un representante legal o defensor judicial. Por su parte, la Regla 15.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 15.2 establece lo siguiente:

> **(a) Un o una menor deberá comparecer por medio de su padre o madre con patria potestad o, en su defecto, por medio de su tutor o tutora general. Una persona mayor de edad o emancipada que esté judicialmente incapacitada deberá comparecer por medio de su tutor o tutora general. Sin embargo, el tribunal podrá nombrarle un defensor o una defensora judicial a cualquier menor o persona incapacitada judicialmente siempre que lo juzgue conveniente o esté dispuesto por ley.**
>
> **(b) En los casos previstos en la última oración de la Regla 4.4(c)[17] y en la Regla 22.2, el tribunal determinará sobre el estado mental de la parte y si es conveniente y procede el nombramiento de un defensor o una defensora judicial.** (Énfasis nuestro).

En consonancia con lo anterior, la Regla 22.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 22, prescribe que "[s]i una parte queda incapacitada, el tribunal, previa moción notificada en la forma dispuesta en la Regla 22.1, podrá permitir que continúe el pleito por o contra su tutor o tutora, o defensor o defensa judicial". Así pues, una vez se alegue falta de capacidad de un mayor de edad o de un menor emancipado, el tribunal deberá evaluar su estado mental y, si así lo determina y encuentra conveniente, puede designar un defensor judicial. *Rivera y otros v. Bco. Popular*, 152 DPR 140, 159 (2000). Véase, también, Regla 15.2 de Procedimiento Civil, *supra*.

---

[17] La Regla 4.4(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 4.4.(c), lee así:

> (c) A una persona que haya sido declarada judicialmente incapacitada y se le haya nombrado un tutor o tutora, entregando copia del emplazamiento y de la demanda a dicha persona y a su tutor o tutora. Si una persona que no haya sido declarada judicialmente incapacitada se encuentra recluida en una institución para el tratamiento de enfermedades mentales, deberá entregarse copia del emplazamiento y de la demanda a dicha persona y al director o directora de la institución. En todos los demás casos en que la parte demandante, su abogado, abogada o la persona que diligencie el emplazamiento tenga fundamento razonable para creer que la persona que será emplazada está incapacitada mentalmente, deberá notificarlo al tribunal para que éste proceda de acuerdo con lo dispuesto en la Regla 15.2(b).

Bajo ese criterio de conveniencia, el tribunal tiene la discreción de establecer cualquier otra medida para proteger los intereses de la parte incapacitada, y a su vez, procurar que el caso sea resuelto de una manera justa, rápida y económica. *Rivera Marrero v. Santiago Martínez*, supra, pág. 486. Véase, también, Regla 1 de Procedimiento Civil, *supra*. Por último, el hecho de que la parte esté representada por su abogado no exonera al tribunal de evaluar su condición mental y de tomar las medidas necesarias. **Ello, pues, "el simple hecho de estar representada por un abogado no implica que estén debidamente protegidos los intereses del incapacitado**". *Rivera y otros v. Bco. Popular*, *supra*, pág. 161. (Énfasis nuestro).

### III.

De entrada, establecemos que procede expedir el auto de *certiorari* a los fines de revisar el dictamen recurrido, según lo permiten las consideraciones dispuestas en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*. En esa línea, precisamos que la situación de hechos expuesta es propicia para el análisis del problema legal señalado. Por lo que, nos permite brindar una solución jurídica para garantizar el debido proceso que asiste a todas las partes y evitar un fracaso a la justicia. *Veamos*.

En el recurso de epígrafe, el señor Flores Peña argumenta que no ignoró indefinidamente el proceso legal, ni tampoco actuó de manera contumaz en la entrega de su contestación del *Requerimiento de Admisiones*. No obstante, reconoce que durante el periodo posterior a la notificación del *Requerimiento* , "atravesó dificultades relacionadas con su condición psiquiátrica de larga duración", lo cual impidió que su defensa pudiera asistirle en la

contestación del aludido documento.[18] Por tanto, sostiene, por conducto de su representación legal, que el foro primario erró al no considerar que padece una "condición psiquiátrica severa, crónica y con resistencia a tratamientos que afecta el funcionamiento del paciente, según certifica el Dr. Saavedra Barreto".[19] En vista de tales circunstancias, nos solicita la revocación de la *Orden* recurrida.

Por su parte, el matrimonio Valentín Ramos arguye que la Parte Peticionaria no presentó justa causa para su dilación en la contestación del *Requerimiento de Admisiones*. Al respecto, aduce que, debió brindar una acreditación adecuada sobre la causa justificada mediante una demostración, detallada y cabal de los fundamentos relacionados con su inobservancia. Sin embargo, alega que no cumplió con tal exigencia, y tampoco solicitó prórroga, por lo que, nos peticiona la confirmación de la determinación impugnada.

Luego de examinar sosegadamente el recurso que nos ocupa, determinamos que el foro *a quo* incidió al admitir de manera automática los hechos alegados en el *Requerimiento de Admisiones*. Adelantamos que el tribunal recurrido no consideró las circunstancias específicas que impidieron que la Parte Peticionaria cumpliera oportunamente con el trámite solicitado dentro del término de veinte (20) días exigido en la Regla 33 de Procedimiento Civil, *supra*. Como resultado, quebrantó el debido proceso de ley que ampara al señor Flores Peña. Por tanto, activamos nuestra facultad revisora y adjudicativa para proveer un remedio a tal situación. *Veamos*.

Surge del expediente ante nos que, la Parte Peticionaria no entregó el *Requerimiento de Admisiones* cursado por la Parte

---

[18] *Véase, Petición de Certiorari*, pág. 2.
[19] *Véase, Petición de Certiorari*, pág. 8.

Recurrida dentro del término exigido. Ahora bien, su demora respondió a circunstancias particulares debidamente acreditadas por su representante legal. Para sostener su posición, el 30 de marzo de 2026, el señor Flores Peña radicó *Oposición a Moción Solicitando que se Den por Admitidas la Admisiones*, en la cual informó la siguiente situación:

> **8. El Requerimiento de Admisiones fue notificado el 22 de diciembre de 2025, junto con el Primer Pliego de Interrogatorios y el Requerimiento de Producción de Documentos. <u>Durante el período que transcurrió entre dicha notificación y la radicación de la presente oposición, el compareciente atravesó una condición de salud que afectó significativamente su capacidad para participar de forma activa en la preparación de su defensa y coordinarse oportunamente con su representación legal. Dicha condición, de índole personal y sensitiva, constituyó la causa principal de la dilación en la contestación del Requerimiento de Admisiones</u>.**
>
> **9. <u>La condición médica del compareciente incidió en su capacidad de respuesta procesal durante las semanas posteriores a la notificación del Requerimiento de Admisiones. La omisión no fue producto de indiferencia hacia las obligaciones procesales, sino de una limitación real y concreta en la condición del compareciente que impidió su participación oportuna</u>**.[20] (Énfasis nuestro y citas omitidas).

Cónsono con lo anterior, el 2 de abril de 2026, presentó certificado médico, en cumplimiento de la *Orden* emitida el 30 de marzo de 2026. En virtud del referido certificado, el Dr. Daniel Saavedra Barreto indicó la condición específica de salud mental que padece la Parte Peticionaria.[21] Del contenido de dicho documento se desprende la siguiente información pertinente al caso ante nuestra consideración:

> **En la actualidad continúa presentando síntomas característicos de su condición, <u>lo cual puede impactar su desempeño social y funcional</u>.** (Énfasis nuestro y citas omitidas).
>
> **<u>Se recomienda considerar estos factores al evaluar sus necesidades y la posibilidad de ajuste a su entorno</u>.[22]**

Nótese que la situación señalada no descansa en meras alegaciones por parte del señor Flores Penas, ni tampoco refleja

---

[20] *Véase*, SUMAC TPI, Entrada 58, pág. 2.
[21] *Véase*, SUMAC TPI, Entrada 61, Anejo I, pág. 1.
[22] *Véase*, SUMAC TPI, Entrada 61, Anejo I, pág. 1.

desidia ni incumplimiento obstinado de su parte. Al contrario, las circunstancias expuestas por la Parte Peticionaria constituyen causas justificadas debidamente respaldadas en prueba documental. Entiéndase que, presentó explicaciones concretas, debidamente evidenciadas, que permiten concluir que la demora ocurrió razonablemente por circunstancias especiales. Véanse, *Freire Ruiz et al. v. Morales, Hernández, supra; García Ramis v. Serrallés, supra*, pág. 254.

En efecto, el certificado médico acredita su condición de salud mental, la cual impidió el cumplimiento del trámite solicitado dentro del término de veinte (20) días exigido en la Regla 33 de Procedimiento Civil, *supra*. Ante tal contexto, reiteramos que el foro primario indició al dar por admitidas las veintitrés (23) alegaciones contenidas en el *Requerimiento de Admisiones*. Lo anterior constituyó una sanción drástica en abstracción del contexto particular que rodea este caso. Ello, pues, resulta evidente que, el incumplimiento en la entrega oportuna del *Requerimiento de Admisiones* ocurrió como resultado del estado de salud mental que padece el señor Flores Peña. Tal situación, a su vez, imposibilitó que su representante legal pudiera asistirle en la preparación de su defensa y coordinarse adecuadamente a tales efectos.

En ese sentido, nos corresponde aplicar un estándar flexible y razonable a tenor con la Regla 33 de Procedimiento Civil, *supra*, para evitar una admisión tácita de las alegaciones en contravención a nuestro sistema de justicia procesal. A esos efectos, conviene recordar que, en *Audiovisual Lang v. Sist. Est. Natal Hnos., supra,* págs. 573-574, nuestro Máximo Foro pautó la siguiente norma aplicable al caso presente:

> **En el ejercicio de su discreción el tribunal debe interpretar la regla de forma flexible para favorecer en los casos apropiados que el conflicto se dilucide en los**

> **méritos. Debe de ejercer especial cuidado cuando se trata de una admisión tácita, o sea, por no haberse contestado el requerimiento dentro del término establecido para ello**. (Énfasis nuestro).

Por ende, el estado de derecho vigente permite el retiro de una admisión tácita "**si ello contribuye a la disposición del caso en sus méritos y la parte que obtuvo la admisión no demuestra al tribunal que el retiro o enmienda afectará adversamente su reclamación o defensa**". *Íd.*, pág. 574. (Énfasis nuestro).

Al amparo de lo anterior, resolvemos que, no procede favorecer la admisión tácita de las alegaciones contenidas en el *Requerimiento de Admisiones*. Avalar tal admisión constituiría colocar a la Parte Peticionaria en un estado de indefensión por motivos de su condición de salud mental, razón que le impidió su oportuno cumplimiento al trámite requerido, como hemos explicado. Por tanto, corresponde el retiro de las veintitrés (23) admisiones para garantizar que el conflicto legal se dilucide en los méritos. Advertimos, a su vez, que este proceder no afecta adversamente la reclamación o defensa de la Parte Recurrida. Al contrario, de esta manera se procura salvaguardar de modo equitativo y justo las garantías mínimas que asisten a ambas partes durante todo el proceso adversativo.

Ahora bien, somos conscientes de que la cuestión previamente analizada no es el único asunto relevante para brindar una solución cabal al caso presente. Por lo que, debemos pronunciarnos al respecto. *Veamos.*

En cuanto a este particular, contemplamos que, el representante legal de señor Flores Peña informó ante el foro *a quo* que enfrentó dificultad para asistir a su cliente a contestar el *Requerimiento de Admisiones*. Consta en la *Oposición a Moción Solicitando que se Den por Admitidas la Admisiones* radicada el 30 de marzo de 2026 la siguiente aseveración: "**el compareciente**

**atravesó una condición de salud que afectó significativamente su capacidad para participar de forma activa en la preparación de su defensa y coordinarse oportunamente con su representación lega**l".[23] (Énfasis nuestro). **Asimismo, surge de la certificación médica obrante en el expediente que, la Parte Peticionaria "[e]n la actualidad continúa presentando síntomas característicos de su condición, lo cual puede impactar su desempeño social y funcional**", según lo informó el Dr. Saavedra Barreto.[24] (Énfasis nuestro).

Recordemos, pues que, ante tales circunstancias, los tribunales estamos llamados activar el procedimiento establecido en las Reglas 15.2 y 22.2 de Procedimiento Civil, *supra*. Las aludidas disposiciones preceptúan que, si una parte tiene su capacidad restringida, el tribunal podrá permitir la continuidad del pleito mediante la designación de un defensor judicial. Así pues, una vez se alegue falta de capacidad, el tribunal deberá evaluar el estado mental de la persona, y, si así lo determina y encuentra conveniente, puede designar un defensor judicial. Véase, *Rivera y otros v. Bco. Popular*, *supra*, pág. 159. A su vez, el foro primario tiene la discreción de establecer cualquier otra medida para proteger los intereses de la parte incapacitada, y procurar resolver el pleito de una manera justa, rápida y económica. *Véase, Rivera Marrero v. Santiago Martínez*, *supra*, pág. 486.

A pesar de lo anterior, en el caso de marras, el tribunal recurrido no efectuó dicho análisis al emitir la *Orden* recurrida. Consecuentemente, desatendió la situación expuesta en las mociones adjudicadas, la cual amerita un examen cuidadoso para garantizar los derechos sustantivos y procesales que asisten al señor Flores Peña. En ese sentido, le correspondía al foro primario

---

[23] Véase, SUMAC TPI, Entrada 58, pág. 2.
[24] *Véase*, SUMAC TPI, Entrada 61, Anejo I, pág. 1.

activar el procedimiento establecido en las Reglas 15.2 y 22.2 de Procedimiento Civil, *supra*, para ponderar si la situación de salud mental del señor Flores Peña requiere la designación de un defensor judicial —ello independientemente tenga representante legal—.[25] No obstante, prescindió de efectuar tal examen. Por tanto, procede regresar el caso al foro *a quo* para celebrar vista evidenciaria a tales fines, y garantizar la adecuada atención de los intereses del Peticionario, según lo exigen el debido proceso de ley.

En virtud de lo anterior, revocamos el dictamen recurrido, toda vez que contraviene con las garantías procesales que amparan a la Parte Peticionaria. En consecuencia, dejamos sin efecto la admisión automática de las veintitrés (23) alegaciones contenidas en *el Requerimiento de Admisiones*. Por lo que, se deberá atender la reclamación mediante las contestaciones al *Requerimiento de Admisiones* sometidas por el señor Flores Peña y la prueba presentada durante la dilucidación del caso en sus méritos. A su vez, ordenamos al foro primario a celebrar vista evidenciaria para evaluar detenidamente si la situación de salud mental del Peticionario amerita la designación de un defensor judicial.

**IV.**

Por los fundamentos que anteceden, ***expedimos*** el auto de *certiorari*, y ***revocamos*** la *Orden* notificada el 6 de abril de 2026, por el Tribunal de Primera Instancia, Sala de Caguas. **En consecuencia, dejamos sin efecto la admisión automática de las veintitrés (23) alegaciones contenidas en *el Requerimiento de Admisiones*. Por lo que, se deberá atender la reclamación mediante las contestaciones al Requerimiento de Admisiones sometidas por el señor Flores Peña y la prueba presentada**

---

[25] Según explicamos en el acápite anterior, el hecho de que la parte esté representada por su abogado no exonera al tribunal de evaluar su condición mental y de tomar las medidas necesarias. Ello, pues, "el simple hecho de estar representada por un abogado no implica que estén debidamente protegidos los intereses del incapacitado". *Rivera y otros v. Bco. Popular, supra*, pág. 161.

**durante la dilucidación del caso en sus méritos. A su vez, ordenamos al foro primario a celebrar una vista evidenciaria para evaluar detenidamente si la situación de salud mental del Peticionario amerita la designación de un defensor judicial.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Lebrón Nieves concurre sin opinión escrita.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones